Gussie L. DAVENPORT, Individually and as Independent Executrix of the Estate of F. B. Davenport,

v.

Ellis CAMPBELL, Jr., District Director of Internal Revenue.

Civ. No. 3-505.

United States District Court
N. D. Texas,
Dallas Division.

Oct. 30, 1964.

Jackson, Walker, Winstead, Cantwell & Miller, by Sam G. Winstead, Larry L. Bean, Dallas, Tex., for plaintiff.

Barefoot Sanders, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., John A. Bailey, Tax Division, Dept. of Justice, Fort Worth, Tex., for defendant.

DAVIDSON, District Judge.

This is a suit for refund of income taxes and assessed interest in the amount of $559.18, plus statutory interest, for the calendar year 1962.

### Questions Presented

1. Whether assessments paid by candidates for elective office to a political party in accordance with state law to defray its expenses of conducting a primary election are deductible as ordinary and necessary business expenses under Section 162 of the Internal Revenue Code of 1954, or as expenses for the production of income under Section 212 of the Internal Revenue Code.

2. Alternatively, whether such assessments are deductible as "taxes," within the meaning of Section 164 of the Internal Revenue Code of 1954.

### Statutes and Regulation Involved

Internal Revenue Code of 1954:

"§ 162. Trade or Business Expenses.

"(a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

* * * * * *

(26 U.S.C.1958 ed. § 162)

"§ 164. Taxes (Prior to 1964 amendment)

"(a) *General Rule.*—Except as otherwise provided in this section, there shall be allowed as a deduction taxes paid or accrued within the taxable year."

* * * * * *

(26 U.S.C.1958 ed. § 164)

"§ 212. Expenses for Production of Income.

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

"(1) for the production or collection of income;

"(2) for the management, conservation, or maintenance of property held for the production of income;"

### Statement

There is no dispute as to the facts. The plaintiff is the widow of Judge F. B. Davenport and the executrix of his estate. Judge Davenport was judge of the 116th Judicial District of the State of Texas. For convenience, Judge Davenport will be referred to herein as the "taxpayer."

In 1962, the taxpayer was District Judge of the 116th Judicial District of the State of Texas, having been previously elected to that judgeship. He ran for re-election and was re-elected in that year for another four-year term, beginning January 1, 1963. (Stip. par. IV.)

During 1962, the taxpayer paid to the Dallas County Democratic Executive Committee the sum of $2,880 pursuant to an assessment of his portion of the expenses of conducting the Democratic primary election in that year, in accordance with Articles 13.07a, 13.08, and 13.08a of the Election Code of the State

of Texas.[1] Fifty dollars of the total assessment was paid as a filing fee under Article 13.07a. The Texas Election Code requires a candidate for elective office to pay such assessment in order to have his name placed on the primary ballot. (Stip. par. IV.)

The taxpayer received a refund from the Dallas County Democratic Executive Committee in the amount of $921.60. Thus, the net assessment paid by him was $1,958.40, which represents his share of the costs of conducting the primary election. (Stip. par. IV.)

Plaintiff submits that the filing fee paid by Judge Davenport is an expense of being a judge. It was absolutely necessary for this fee to be paid if Judge Davenport were to continue in his business of being a judge. Accordingly, such fee is an ordinary and necessary expense of carrying on his business and should properly be deductible as such.

Dues paid to the State Bar of Texas are deductible by lawyers as ordinary and necessary business expenses. Income Tax Regs., § 1.162–6; Henry P. Keith, 1 CCH Tax Ct.Mem. 184 (1942). In Texas, as in other states that operate under the so-called integrated bar system, good standing in the State Bar Association (including payment of dues) is necessary for continued qualification to practice law.

If the McDonald opinion, McDonald v. C. I. R., 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68, does fit and control the case at bar, then judgment must run for the defendant and the plaintiff may not recover.

The question immediately presents itself, are the two cases, the McDonald and the Davenport case now before us, identical in fact or is there not a distinction manifestly between them.

In the Davenport case a deduction was made mandatory by law. In the McDonald case it was not by law but by action of the party executive committee.

Again, in the Davenport case the assessment would be used locally, whereas in the McDonald case it would be statewide and perhaps nationally, going as it were to the "Democratic Campaign Fund."

Again, in the Davenport case the money was for a specific purpose and that not used was to be refunded. In the McDonald case there was no fund authorized or provided even though the judge died before he realized the salary considered in the assessment.

Under the law of Texas a lawyer, for example, may not practice law unless he pays his dues to the Bar Association. The payment of these dues is made mandatory by statute. It is deductible in income tax figures. In contributing to the expense of holding a primary election in a particular county the assessment is mandatory and unless paid the candidate may not have his name placed upon the ballot and must thereby cease to be a judge drawing salary fixed by law.

We think it very clear that the contribution exacted of Judge Davenport in the amount of $1958.40 was mandatory and was necessary expense for the production of his future business; namely, being a judge and drawing the emoluments and salary provided thereby. We may call it a tax or we may call it an assessment, but it was by law a legal deduction required and made necessary.

In the briefs and argument of counsel for both plaintiff and defendant the question as to whether or not the payment made for the privilege of having his name printed on the ticket was a tax or an assessment. By the definition of Mr. Black it would not be a tax levied for the general support of the government nor would it be an assessment of the type levied against property to pay for an improvement as for example the construction and paving of a street in front of or adjacent to a lot in a city, but assessments may be for different uses and purposes. The assessment in this case

1. 9, Vernon's Texas Civil Statutes Annotated, Arts. 13.07a, 13.08 and 13.08a (1963 Supp.)

was simply a deduction fixed and required by law and the taxpayer had no discretion. In the McDonald case in Pennsylvania the judge might have a controversy with the party committee but in Texas it would be with the law of the State.

The deductions allowable to the taxpayer were reformed and restated by the Congress in 1942. This action of Congress was almost immediately after the Supreme Court's decision in the case of Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783.

In the Higgins case we have:

"Petitioner, the taxpayer, with extensive investments in real estate, bonds and stocks, devoted a considerable portion of his time to the oversight of his interests and hired others to assist him in offices rented for that purpose. For the tax years in question, 1932 and 1933, he claimed the salaries and expenses incident to looking after his properties were deductible under Section 23(a) of the Revenue Act of 1932. * * *

* * * * * *

"The Board of Tax Appeals held that these activities did not constitute carrying on a business and that the expenses were capable of apportionment between the real estate and the investments. The Circuit Court of Appeals affirmed, and we granted certiorari because of conflict."

As the law stood in 1939 the Higgins case was affirmed by the Supreme Court and the deduction disallowed.

Congress convening shortly thereafter took cognizance of the effect of the Higgins decision and restated the items that would be deductible. In this restatement of the deductible items appears the word "production" of income which was not contained in the former statute under the Higgins decision similar to the holding in the McDonald case.

With the passage of this amendment an essential question arises as to the deductibility. Were the expenses required by the statute and paid by the taxpayer incurred to *produce* income? By its action Congress disposed of the problems in the Higgins case and declared as a matter of law that expenses incurred by a taxpayer in the production of his income was a deduction along with the other items formerly contained in the act.

Moreover, when Congress considered the amendment of 1942 the committee of the House and of the Senate in commenting upon and recommending the passage of the amendment and presenting it to their respective bodies for passage stated:

"The Amendment * * * allows a deduction for the ordinary and necessary expenses of an individual incurred during the taxable year for the *production* and collection of income * * * whether or not such expenses are incurred in carrying on a trade or business." (Emphasis given)

If the word *production* was not of significance and importance, the amendment manifestly would never have passed. The attention of Congress was no doubt directed to this need by the Court's decision in the Higgins case. And since Congress in its committee report and by the enactment that followed allowed cost of production as a necessary and proper expense, we think it fully applies in the Davenport case now before us.

Higgins was a man of varied business interests. He had thus investments of varied interests and revenues therefrom each coming from its respective source. In looking after these several properties Higgins hired assistants and charged their costs or salaries up as necessary deductions in his tax return. The Higgins case disallowed it. The act of Congress inserted the word production so that the rule in the Higgins case would not apply. It therefore must necessarily follow that since it was necessary for Davenport to pay for having his name put upon the election ballot and without which he would not be continued in the State service as a State Judge and with-

out which he would not draw his future compensation and salary that the payment of such deduction was truly an expense for the purpose of producing income within the terms of the law.

The net assessment paid by Judge Davenport to have his name put upon the ballot as required by law was $1958.40. This deduction not being allowed and Mrs. Davenport being required to pay the tax necessitated the payment by her of $559.19 which should be refunded, since the payment was a necessary and proper expenditure not only for the carrying on of the business but for the production of the business.

Judgment will be rendered for said amount plus interest in favor of the plaintiff.