**Horace E. and Edith B. NICHOLS, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 73–3159.

United States Court of Appeals, Fifth Circuit.

April 18, 1975.

Rehearing Denied June 11, 1975.

H. E. Nichols, pro se.

Edith B. Nichols, pro se.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Tax Div., U. S. Dept. of Justice, Lawrence B. Gibbs, Acting Chief Counsel, Stephen M. Friedberg, I. R. S., Bennet N. Hollander, Jeffrey S. Blum, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN *, CLARK, RONEY and GEE, Circuit Judges.

PER CURIAM:

The taxpayer, Horace E. Nichols, is now Chief Justice of the Georgia Supreme Court. On this appeal he argues that the Tax Court erroneously determined that the fee he paid to have his name placed on the ballot in the 1968 Georgia Democratic Primary was not deductible under either section 162, 212 or 164 of the Internal Revenue Code of 1954.[1] We affirm.

The facts as stipulated and relevant to this appeal are as follows. The taxpayer was appointed effective November 16, 1966 to fill an existing vacancy on the Georgia Supreme Court until the next general election on November 5, 1968. In May 1968 he qualified under Georgia law to run in the Democratic Primary Election for the unexpired portion of the regular term (November 6, 1968 through December 31, 1968) and for a succeeding term beginning January 1, 1969. In order to have his name placed on the primary ballot as a candidate, the taxpayer was required to pay an 1,800 dollar qualification fee to the Georgia Democratic Party. Although its amount was set by the party's executive committee, 75% of this assessment was used to defray the cost of the 1968 primary, and the remaining 25% was subsequently used to

finance a 1970 primary run-off. No part of the fee was used to espouse the causes of party candidates in the general election. The taxpayer was unopposed in the primary and the general election and was elected both to fill the remainder of the unexpired term and to serve for the next succeeding term. On his 1968 federal income tax return, he subtracted the amount of the primary qualification fee as an adjustment to income, but deduction of this sum was disallowed by the Commissioner. The propriety of this disallowance is the sole appellate issue.

The alpha and the omega of our consideration of the deductibility of this qualification fee is McDonald v. Commissioner, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68 (1944). The taxpayer in *McDonald* was appointed to serve an unexpired term as judge of the Court of Common Pleas of Lucerne County, Pennsylvania, his continuance in office for a full term being dependent upon success in his party's primary and the next general election. To obtain the support of his party organization, Judge McDonald had to pay an "assessment" to the party's executive committee. The proceeds of these assessments "went to the general campaign fund in the service of the party's entire ticket." The Commissioner disallowed Judge McDonald's deduction of this assessment and of the expenses he incurred in a losing campaign seeking election. The Supreme Court held that deduction of both amounts was improper under then existing sections substantially equivalent to present sections 162 and

---

* Judge Morgan did not participate in the consideration or decision of this case.

1. 26 U.S.C. § 162 provides in relevant part:
   "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."
   Section 212 provides:
   "In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
   (1) for the production or collection of income;
   (2) for the management, conservation, or maintenance of property held for the production of income; or
   (3) in connection with the determination, collection, or refund of any tax."

Section 164 provides in relevant part:
   "(a) General rule.—Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:
   (1) State and local, and foreign, real property taxes.
   (2) State and local personal property taxes.
   (3) State and local, and foreign, income, war profits, and excess profits taxes.
   (4) State and local general sales taxes.
   (5) State and local taxes on the sale of gasoline, diesel fuel, and other motor fuels.
   In addition, there shall be allowed as a deduction State and local, and foreign, taxes not described in the preceding sentence which are paid or accrued within the taxable year in carrying on a trade or business or an activity described in section 212 (relating to expenses for production of income)."

212. Since "his [McDonald's] campaign contributions were not expenses incurred in being a judge but in trying to be a judge for the next ten years," they were not expenses incurred in "carrying on a trade or business" under section 162's predecessor. Describing the antecedent of section 212, the Court stated "[it] merely enlarged the category of income with reference to which expenses were deductible [and] did not enlarge the range of allowable deductions of 'business' expenses." [2] Therefore, "[t]hey [the campaign expenses] were not incurred in 'carrying on' his 'business' of judging." The Court went on to indicate that sound policy reasons supported the limitation of tax deductibility to items clearly authorized by Congress because they constituted so integral a part of the political process. [3] As *McDonald* observes, allowing the deduction of campaign expenses involves such potentially subtle ramifications on the entire political process that express legislative rather than interpretive judicial consideration is necessary. [4]

Our decision in Campbell v. Davenport, 362 F.2d 624 (5th Cir. 1966), is dispositive of all issues here. In *Campbell* the taxpayer sought to deduct a primary qualification fee, the proceeds of which were used by his party's executive committee to defray the costs of holding the primary. We held that such an expenditure was deductible as a tax under section 164 as it existed prior to amendment. Before doing so, the argument that this fee was deductible under either sections 162 or 212 was rejected in the following terms:

"[T]hough the assessment in the present case differs in some ways from that in *McDonald* the rationale of *McDonald* prevents the reaching of a different result here. Judge Davenport's assessment was incurred as an expense

of attaining the office, not in performing the judicial function. For this reason, the deduction of the assessment as an ordinary and necessary expense incurred in carrying on a trade or business or in the production of income was properly denied by the Commissioner."

While *Campbell* confirms that the fee paid by the taxpayer in the instant case constitutes a tax, [5] the post *Campbell* amendment of section 164 causes it to have the effect of denying deductibility. This is so because section 164 now limits the tax which Justice Nichols can deduct to those covered by sections 162 and 212. Thus *Campbell's* interpretation of these latter sections, both confirms tax status and denies deductibility. We

Affirm.

CLARK, Circuit Judge, with whom BELL, COLEMAN, RONEY and GEE, Circuit Judges, join, dissenting:

The filing fee paid by Justice Nichols was not paid into a political party general campaign fund. Rather, it was used to defray the necessary cost of conducting the party primary. Justice Nichols was not opposed in the primary or in the general election; therefore, merely entering the primary was tantamount to election. He had to pay the fee to continue in the only job he had. In no pragmatic sense could it be said that he incurred the expense in "trying to be a judge." Whether the fee is viewed as a tax or as an ordinary and necessary expense, to be deductible, it must be incurred in carrying on a trade or business under section 162 or an activity described under section 212. Justice Nichols paid the fee because it was an absolute business necessity to the continued production of his livelihood.

2. *See also* United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963).

3. The Court stated:
"The relation between money and politics generally—and more particularly the cost of campaigns and contributions by prospective officeholders, especially judges—involves issues of far-reaching importance to a democracy and is beset with legislative difficulties that even judges can appreciate. But these difficulties can neither be met nor avoided

by spurious interpretation of tax provisions dealing with allowable deductions."
323 U.S. at 63, 65 S.Ct. at 98, 89 L.Ed. at 70.

4. The Tax Court, in Carey v. Commissioner, 56 T.C. 477, 480 (1971), recently discussed some of these policy considerations in denying a deduction of campaign expenses to an unsuccessful candidate for reelection as president of a union.

5. *See also* Nichols v. United States, 223 F.Supp. 709 (N.D.Ga.1963); and Maness v. United States, 367 F.2d 357 (5th Cir. 1966).

The Supreme Court in *McDonald,* and this court in *Campbell,* foreclosed deductibility in a conscious effort to stay out of the political thicket. I cannot dispute the wisdom of such reasoning. However, business deductions which can be as easily segregated from political considerations, such as this fee exacted from Justice Nichols for the right to retain his job, pose no danger to the public policy consideration underlying the decision in *McDonald.*

While *Campbell* is not distinguishable on its facts from the case at bar, *McDonald* is. Judge McDonald not only paid a substantially larger fee than Justice Nichols, Judge McDonald's fee went into a political party "war chest" to defray all manner of campaign expenses. Judge McDonald was opposed and, in fact, lost the election. His contribution was necessary to obtain party support and to influence voters. He was trying to win an election to be a judge in the future. In *McDonald* the Court also dealt with a deduction for "campaign expenses". In the case at bar, there were no related campaign expenses because there was no campaign.

At the conclusion of the opinion in *McDonald,* the Supreme Court clearly indicated that it was depending on the Tax Court to apply the principle it there announced to the "quagmire of particularities" involved in a "detailed analysis of the special circumstances of various 'businesses' and expenses incident to their 'carrying on'." The Tax Court has exercised this function and allowed deductions in situations analogous to the case at bar, notably in the area of employment agency fees.

Fees paid to employment agencies have been held to be deductible on the basis that the expenditures were incurred by the taxpayer in carrying on his trade or business. The expense is deemed ordinary and necessary to improving the taxpayer's position in his trade or business albeit under a different employer. *See* Primuth v. Commissioner, 54 T.C. 374 (1970); Kenfield v. Commissioner, 54 T.C. 1197 (1970); Cremona v. Commissioner, 58 T.C. 219 (1972). In *Primuth* the Tax Court determined that Primuth was in the trade or business of being a corporate executive. The court also refused to condition deductibility on whether the fee was contingent on obtaining employment or not. The Tax Court allowed the deduction in *Kenfield* even though the taxpayer did not accept the job offer which resulted from the employment agency's efforts. In *Cremona* the fee was deductible despite the lack of success in finding employment for the taxpayer. There is no valid reason for allowing the deduction for the fees paid by these taxpayers as a prerequisite for obtaining a better position and disallowing the deduction for the fee paid by Justice Nichols as a prerequisite for continuing in his job.

It would not be inconsistent with *McDonald,* for the court en banc to depart from that portion of its decision in *Campbell* which denies deductibility to the fee paid by one situated as Justice Nichols. *Campbell* unnecessarily restricts *McDonald* and precludes the exercise of the discretion that holding granted to the Tax Court to analyze specific deductions claimed to constitute proper business expenses.

## ON PETITION FOR REHEARING

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN *, CLARK, RONEY and GEE, Circuit Judges.

PER CURIAM:

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.

BELL, COLEMAN, CLARK AND GEE, Circuit Judges, would grant the petition for rehearing for the reasons stated in Judge CLARK's dissent to the opinion of the court en banc.

* Judge Morgan did not participate in the consideration or decision of this case.